The first case this afternoon is 413-0161 in re Estate of Mitchell-Warth, if that's pronounced correctly. For the appellant is Kevin Miller. You are he, sir? I am the appellant. Okay. And for the appellate is Michael Rathsack. Yes, sir. Is that pronounced correctly? Exactly. And rare. I'll try. Okay, Mr. Miller, you may proceed, sir. Thanks and good afternoon to the court. I do represent the defendants below in a medical malpractice case. We graciously agreed to hear this interlocutory appeal and we thank you for that. In 2006, Mitchell-Warth was a 52-year-old man. He came to my client, Patrick Hartman, a primary care physician in Arthur, Illinois. He thought he was perhaps diabetic and wanted to be checked out. And so they worked him up for that. And over the course of the next almost three years, the two, Dr. Hartman and Mr. Warth, had about 18 physician-patient encounters. And they were for a variety of things, the usual type of things of a man that age. They were diabetes, hypertension, personal problems, he was required a referral. But after three years, Mr. Warth took his treatment to another physician and then was later diagnosed with prostate cancer. Unfortunately, Mr. Warth passed away during dependency of this appeal from prostate cancer. His wife now is the named plaintiff in the appeal here. The lawsuit centers around a failure to screen for prostate cancer. Screening, of course, is a two-part test. One is an examination of the prostate by the physician. And the other portion of the test is a blood test looking for PSA, prostate-specific antigen. It tells you not if there is cancer, but if something is wrong with the prostate that might hold further investigation. So during dependency of this case, we raised as an affirmative defense the statutes of limitations and repose. We filed a motion for partial summary judgment on that affirmative defense, claiming that part of this three-year period was barred by the statute. That required the circuit court to consider the case of Cunningham v. Huffman, which I would say correctly announced the rule of law or dealt with the rule of law that if there is a continuous course of treatment such that we can say that that course is really one continuing wrong, the statute of limitations, the statute of repose, starts running at the end of that course of treatment. The variation on that question in this case is whether or not a lack of treatment can be said to be a course of treatment for a specific condition. As the plaintiff's expert said in her deposition... I'm wondering why the question wasn't posed like that. I'm sorry? Well, the question also includes the term negligence, which really changes the whole perspective and significance of the question. Yes. Your Honor, perhaps some of the questions that arise in this case are both interesting and worthwhile, but yet not posed in this question. For example, is it negligent not to screen? That's not the question before the court, and I'm not even contesting that issue for the purposes of this argument today. Also, can screening be done negligently? That's an interesting question, too, but it's also not before the court. Of course, blood tests could be misread over a three-year period again and again. What this involves is whether there is a lack of treatment or that question that we probably all had as first-year law students that sent us running to Black's Law Dictionary. If we didn't get it right in contracts, we got to do it again in torts. That question of whether nonfeasance is the same as misfeasance, because there is a difference, a very qualitative difference. Nonfeasance, like the plaintiff's expert said, in the universe of interaction between these two, it never came up once. The patient didn't bring it up. He didn't complain of a urinary problem. The doctor didn't bring it up. He didn't try to educate his patient about the benefits and pros and cons of being screened. Neither one of them, as they interacted on these 18 occasions over three years, ever broached the subject. Symptoms didn't arise. Symptoms weren't brought to medical attention. Medical attention didn't address the potential lack of symptoms and what that would mean. Was the original certified question you proposed even more lengthy than the one that was now before us? Yes, it was. I had occasion recently to look over cases dealing with special interrogatories, and I'm reminded about how case law says special interrogatories should be free of argument, short, simple, where possible declarative sentences, not the alternative or conjunctive, et cetera. Not a bad thing to do, and sort of like questions as well, counsel. Yes, I'll agree with you there, and I'll agree with the trial court when the trial court narrowed the questions so that it is what it is before you here today. If I could, though, I'd like to try to illustrate our point of view with a rather quick illustration, and that will involve me. I'm a 54-year-old man, so I'm roughly the same age Mr. Worth was when he came to his doctor. And if I see my doctor for complaints related to the shoulders and above, I'll take the southern territory out of it. I see him for a sore shoulder or maybe a rash on my neck or my hearing is going or something like that. At the end of that three years, can the doctor send me a bill for not treating prostate cancer under the authority of Cunningham v. Huffman, which says a continuous course of treatment is one continuing wrong, and this is a continuing wrong. Of course he can't do it. Or if I'm Medicare age, could he send a bill for not treating prostate cancer to Medicare and not be arrested for Medicare fraud? We know the answers to that. Non-treatment is not and never has been the same as positive treatment. Non-feasance is not misfeasance. A failure to treat, a failure for it even to come up, is never the same as dealing with it in a wrong way in a continual course over three years, which the patient has a right to rely on his doctor when that happens. That's the whole point of this rule and the point of distinguishing non-feasance and malfeasance. A patient who is told by his doctor that his PSA levels are normal or that his examination is normal has a right to rely on that. He doesn't need to be going to another doctor to make sure that he doesn't have a cause of action. But if it never arises in the first place, then we should be applying the rule of law. It's a legislative rule and it has an intent, and that is to put an end to litigation at a certain point, and unfortunately sometimes before it even arises. So, with that illustration, I'm satisfied with my argument today. Well, is it a breach? Could one argue, and might there be experts that would testify that it would be a breach of care, a failure to conduct specific prostate screening testing with a 50-ish male who is overweight, hypertensive, diabetic or pre-diabetic? And someone would say, well, of course it is. One expert would say, of course it is. That in itself is negligent and the continuous course of treatment was he was your patient and you knew how old he was and you knew that he already had various physical complaints and I don't know that there are studies that show if you've got other physical ailments, another one is far more likely to show up than if you walk in as a healthy male at that age. But if we answer the question the way it's phrased, we've already decided that it was negligent. I'm glad you raised the question because that is the disputed question at the trial court level on what is the standard of care. Again, it's not the question that's before you. A male in his 50s like me is well aware of the controversy out there of prostate cancer screening and what's been done with the American Cancer Society, the U.S. Preventative Services Task Force. And since I represent defendants, you can guess which side of the issue I would come down on at the trial court level. But I'm not contesting that issue. I'm willing to say, let the plaintiff prove for this court today that it is negligent to do that. The question is still a different one. It's still a different one. Is non-treatment of a condition, of, I'll emphasize of this time, non-treatment of a condition like prostate issues the same as positive negligent treatment for a condition? Treatment implies the ability to give services that have value and therefore bill. And since Dr. Hartman never saw this patient, never came up to prostate cancer, he could not have billed because he never rendered services on that issue for that specific patient. In your reply brief, you said that the certified question essentially asks, does the failure to screen constitute treatment for a specific condition? But that's not what you asked. That is, that would be the statute of repose issue. We could deal with the idea of was it negligent or not, perhaps later on. But the first question is really, does the failure to screen constitute treatment for a specific condition? Exactly. If the answer to that is yes or no, that would be different. But now we have a question about building in, with the question actually asked, the standard of care and how should that be. It seems to me without ever getting into standard of care, for instance, that the answer to this question had been that the failure to screen for prostate cancer did not constitute treatment for a specific condition. Then we don't have to worry about whether it was negligent or not. I see. Now I understand. It's not a continuous treatment in the first place. So you've won on the Cunningham standard just for that reason. Yes. We don't have to resolve any standard of care. I follow. But that's not the question before us, and that makes it a little bit trickier. We have to resolve. And in order to do that, we are called upon because you use the term continuing course of negligent treatment for a specific condition. Then we have to ask, well, yes, it's, we have to say, yes, it was part of the treatment. And then we'd also have to say it was negligent on top of it because he didn't ask the right questions or didn't do what he should have done. I'll follow you right up to your last sentence, and that's where I get off the train. Okay. Okay. Let's assume it was negligent. Was it treatment, Your Honor? Was it treatment? If it never came up. Why would we assume it's negligent unless you're conceding that it's negligent? And you're not conceding that, are you? I'm not contesting it for the point of this argument today. I'm not contesting it at all. I'll never concede it in the trial court. That is one of the central issues. The Supreme Court, however, is the one who gave us this phrase, and that's why it's quoted in the question. We're stuck with the phraseology. Counselor, the problem with your question is that it has the word negligent in it. If you read your question and take out the word negligent, then perhaps this court could answer your question. But with the word negligent in there, we're resolving this case by answering either yes or no. Which a certified question is supposed to impact the ultimate outcome of the case. That's one of the criteria under Rule 308. But to get to your concern, which you've defined for me well at this point, the Supreme Court set the standard. It's continuous and negligent course of treatment for a specific condition. I'm afraid I'm stuck with that language. So to apply that rule, let me try to redirect your honors to the other word in the question, and that is treatment. There wasn't any treatment. There wasn't any treatment. It didn't initiate by the patient. It wasn't initiated by the doctor. He didn't educate. He didn't screen. He didn't test. He didn't biopsy. So omission can never be negligence? Omission of the physician? That's a good question. Something the physician should have done? No, that's not the question. No, that's not the case. An omission, of course, can be negligent. For example, we have a two-prong test for screening for prostate cancer, an examination, and a blood test. You can omit the blood test and be negligent. That's what negligent treatment is. But before we even decide if it's negligent, is it treatment at all where there is nonfeasance? That's what I'm trying to emphasize for you here today. Let's take an extreme example. An orthopedic surgeon. I see him because I've played too much hardcore tennis and I've got bad knees. He never screens me for prostate cancer. He never does. Is that negligence? Well, let's not decide that question. But does he ever treat prostate cancer? No. So whether it's negligent or not, it can't ever be considered the type of treatment that is cited. Does it matter that his specialty would be different than a general practitioner? Yes, Your Honor. These are all bad questions. That's what I'm trying to emphasize. It's not before the court today. It's not, in my opinion, implicated in this case, in this question. I'm not trying to ask a standard of care question that should be answered by an expert. I'm simply trying to say, even if it's negligent or not, was it treatment? Was there any treatment for prostate cancer? The plaintiff's own expert concedes, in the universe of treatment we've heard words, in the universe of the interaction between these two, it never came up. There was no treatment. He couldn't have billed. It would have been fraud to do so. You're saying it's a legal question for this court to decide whether it was treatment, even though there may be experts on both sides of the issue, medical experts. Is that what you're arguing? That's exactly what we've got here, yes, sir. Huh. Yes, sir. That sounds like a fact question to me, not a legal question. I have one doctor saying it is treatment. I have another doctor saying it isn't. And then I put on a robe and I can say which one is correct at this stage, on a 308? No, I think you have misquoted the plaintiff's expert. Can I cite for you what she said about that? I didn't quote anybody. I'm sorry. If I misstated it, I'll stand for the correction.  But I'm looking at page 9 of the appellant's brief where we're quoting the plaintiff's expert. No, not page 9. It's a few pages before that. Here it is. Page 7. The last question that I asked her in this quotation is this. It says, I'm pretty sure the answer is no, that Dr. Hartman didn't. All of his care and treatment, his universe of treatment, did not include prostate cancer. I think that's correct, and let me know if that's your impression also. She said that's true, and then here's the question. The whole gist of this lawsuit and your testimony is he failed to treat? Answer, no. The gist of my lawsuit is that he failed to educate and screen for prostate cancer. She doesn't say he ever treated. Before treatment comes, before screening comes, there has to be some education before treatment becomes screening. And she's not saying there was a treatment here. She's saying there was negligence in failing to screen, but that arises well before treatment. Did you make a motion to dismiss pursuant to 2619A? No, sir. It was a summary judgment motion pursuant to 21005. Couldn't you have made a motion to dismiss on the grounds that the statute of oppose had run? Perhaps so, but I wanted a complete record before we brought it to the court's attention. Well, because then you could submit any materials, affidavits, depositions, anything you wanted to in support of your motion, could you not? Perhaps so, but. . . Perhaps so? Is there a question about it? I'm considering it. I do believe it's probably a way we could have gone. And the reason I mention that is because you, I guess within the discretion of the court, it seems to me that this would be a dispositive issue, could have sought a trial on the question of the application of the statute of oppose or statute of limitations before you get to the merits of this case. And whether or not there was any negligence in the standard of care, et cetera, and deal with the question of either the statute of oppose or the discovery rule and the statute of limitations, and have that resolved before trial. But you didn't choose to do that. No, you're correct. We did not choose to do that. We raised it as an affirmative defense from the get-go, put everyone on notice. We developed the record fully so each side had the opportunity to look at the issues through expert testimony if needed. So if we deny your appeal or we agree with the trial court, essentially this is going to be a trial on everything, including, I guess, the statute of oppose and the jury's going to have to be instructed. Resolve this, and if we resolve it against the defendant, then continue on and decide whether or not the plaintiff has proved the defendant negligent? I'm sorry I got lost in there again. But, Your Honor, I do recall now why we did not file 618. That is because a motion to dismiss considers all well-pled facts as true. And in each of the 18 visits that was described in the complaint and the amended complaint, plaintiff alleged not only that he was there for whatever condition, but that he was there for a general physical examination, which probably would have included the obligation to do a screening or at least discuss it. So because we disagreed quite strenuously with the fact that this man did not present for general physicals 18 different times over a course of three years, it would not have been appropriate to consider those facts as true without a fully developed record. Okay. Thank you, Counsel. You have a chance to address this again in rebuttal. Mr. Ratzak? Good afternoon, Your Honors. Michael Ratzak on behalf of the Plaintiff's Appellate. If I might begin by just pointing out, now I understand the Court's problem with the certified question, and I will admit until Your Honors just began it, I went past it. That's unfortunate. The evidence in this case at this point is that there is a duty on the part of a general practitioner, which was the defendant here, to each time a patient comes to him in this risk category, a male over 50, to offer, not whether they screen necessarily, but to offer screening to offer a PSA. So that's the underlying issue that we're looking at here. And Plaintiff's contention is that, in line with the testimony, is that the failure to offer that opportunity to Mr. Worth on each occasion provided a continuous course of medical treatment, and that in turn brings into play the statute of repose and avoids the statute of repose by virtue of the continuous course of care exception contained in the Cunningham case. If I can start by going back to something that did not come up in the appellant's argument. Part of the appellant's brief is based upon the stance of the physician, that Cunningham's language requires that there be a specific condition, not only a continuous course of care, but a continuous course of care for a specific condition. I said there's no specific condition here because the patient was just there generally. I think if the court reads the Cunningham decision, it will see that the language that the hospital attributes to the court is actually at the very beginning of the opinion. And the plaintiff in that case is the one who put the question before the court and asked whether there was a continuing course of care for a specific condition. The court said, we agree. But when the court in Cunningham went on to say, it's holding, we hold, given the circumstances, the plaintiff's not barred if she can't demonstrate there was an ongoing course of continuing negligent medical treatment, the court did not say anything about a specific condition and its opinion doesn't go back and bring that into play. So Cunningham really stands only for the proposition that there has to be an ongoing course of continuous medical treatment. I guess the question here then is, is medical treatment somehow different than patient care? I think that's what the hospital is telling this court. I think they are agreeing that Mr. Worth was there as a patient and he was getting care, but they want to divorce or cut off patient care, which would presumably include the duty to offer screening to the patient from the concept of medical treatment. This problem comes up because the statute itself, 13-212, talks about patient care. The exception to the statute of repose in the court's opinion talks about medical treatment. So did the legislature, when it talked about medical care in the statute of repose, need something different than the Supreme Court did in Cunningham when it talked about medical treatment? I would suggest to the court that I think they're both talking about the same thing. They're talking about what I or anyone would expect when they came in to see their doctor. What did your client see the doctor for? He did not come in and ask for a screening for prostate cancer, nor did he complain of symptoms. He was there basically for diabetes and general medical care. I think that's shown by the facts of the record. Our point is that the hospital has referred to cases where the person was there with a general set of complaints, and I think one of your honors asked, well, what if he's there before an orthopedic surgeon? Does an orthopedic surgeon have a duty to offer screening? I don't know because I don't have the expert testimony, but I would suspect not. The point here, though, was that there is specific testimony that a general practitioner who is seeing the whole population has a duty for this one particular risk group to offer the screening. That did not occur. Now we have, in our opinion, an omission in patient care, which should be the same as an omission in treatment. The question of what medical treatment is is something that neither one of us has been able to find a lot on. I would argue you don't find a lot of court discussion of what medical treatment means because I think everybody kind of puts it in the same basket, but we did cite that the courts in one case that said examination and detection of prostate cancer is the first step in treatment. That court, I think it's the Cole Court, pretty much treated it as all one thing. When I come into the office, I'm under patient care. I'm getting treatment, or I'm not getting treatment. The failure to treat still falls in the same basket. If that's the case, then Cunningham does apply and we should prevail. Cunningham was a case, however, where there was specific treatment for a condition. There was. That's the problem with Cunningham. The courts in Cunningham did not have to address exactly what's being said. I agree with my opposing counsel. Cunningham did not have to address a situation where it was a failure to screen. It's not just a failure to treat. It's not just a failure to diagnose, which is where I thought they might go. We have got such a very specific instance of a duty to screen for a specific condition in a specific part of the population. The same duty that you have if you're a family doctor or maybe a couple of other specialists. When a woman comes in, you need to check. You need to offer a pastor. I said in the case of apparently optometrists. I didn't even know they have a duty to screen for glaucoma. I had no idea that was the case until I found that case in Alabama. So you're talking about a very specific duty here that this doctor had, and that duty should be patient care. And if he did it wrong, it would be treatment. If he doesn't do it at all, does that somehow fall out of all these protections? Does the doctor walk away? That doesn't seem what the legislature. That doesn't seem. The legislature did not think about our position. I don't think. I'm not going to say that. They passed laws. We all know that. But the court, I suspect, I would predict the Supreme Court, if given this case, would come to the same conclusion. They would just begin to talk more about admissions. Is this a question of fact? Ultimately, I believe that's probably where we're headed because I suspect. At this point, we're a little bit premature. I don't know what his experts are going to say. His experts may say, that's just not within the scope of what doctors do, Matt Sack. Your side is wrong. So in his affirmative defense, then I guess, assuming he has experts who would, let's assume, say that, this is not a duty that's imposed upon him under these circumstances, would this then be a jury issue on the statute of repose applicability at trial? I think so. I'm hesitant in trying to pose this question to a jury and argue to a jury I can see with all kinds of problems. But I don't know because we haven't completed the discovery. I don't know what other doctors are going to say. Maybe a doctor will say something I never even thought about. Maybe their doctor doesn't have an answer, and maybe their doctor will agree with us. I'd get a doctor on the stand and say, if everybody agrees, and that's going to be the catch, do I have a duty to offer screening as a doctor, but if everybody agrees that you should offer, is that treatment or not? Well, we'll see. I don't know. I can't answer that question. I suspect we're going to prevail on that one in front of a jury. I suspect nowadays almost everybody knows that you want prostate screening. Well, I understand what counsel said in his reply. There's now some question about whether you should have it or not, but that's different than whether it should be offered in the first place. We all get to make our own decisions on that, and I'm personally experienced in that. You want to know, and you get to make your own choice. That's pretty important. Anybody, I don't know if anybody in the courtroom, but anybody who's been in that shoes or has a friend who's been in those shoes, you get to decide that yourself. What is the difference in the standard of care issues before us here? Do you differ from the defendant? As it stands now, we don't have one. We only have the standard of care of the plaintiff because our experts said the standard of care requires an offer to screen and an offer to do the PSA every time. We don't have their side of the picture yet. That reminded me, one little section in here, one little thing that did come up that might change if the courts can actually answer the question, is a reminder that this doctor did in fact perform blood tests and he was criticized for not including the PSA test within the blood test. So now we've got some actual care. We've got a blood test being given, and we've got the doctor not telling the hospital to run that additional test. That brings us even within the definition of treatment that the hospital and the clinic is offering. I think that got overlooked in the reply. Unless the court has some further questions. I understand before you leave it, you're saying that, I think you said, that a careful reading of Cunningham would suggest that the specific condition language is not a necessary finding. That's correct. I believe it is not part of the holding. The court starts out with the plaintiff says and has the words specific condition, and then the simple words re-agree, and then when you go into the court's holding, that disappears. The court's holding doesn't talk about specific condition. The words specific condition keep popping up down the road in other appellate cases, but nobody ever challenged it. It was never relevant to anything else. They're just quoting the wrong language out of Cunningham. So what's the rule in Cunningham as you think it should be stated? Just without the specific condition. You avoid the statute. The statute to repose does not begin to run until the end of a continuing course of negligent medical treatment. That's the simple rule of Cunningham. You need a continuous course of treatment. I'm not quarreling with that. A trial would determine if it's negligent or not, which is the problem that your honors have raised with us. So if a physician failed to diagnose some condition, perhaps a married woman could do that, and ultimately she developed cancer, but it had been years since her treatment. Meanwhile, she came in for a problem with regard to a broken arm, and he didn't treat her properly on that. Cunningham goes back to the cancer then because we're not concerned with the same treatment or condition? For once in my life I actually thought of a question before I stepped up to the bench, Your Honor. The difference there, and that's why I raised it before, we're talking about a separate question. The question of failure to diagnose has bedeviled some of the experts because a failure to diagnose today... Do I have a duty to diagnose every time the patient comes in to find the doctor? The first time the patient complains of a bad arm and I miss it. Do I have to go back a year after a year and say, well, how about that arm? I don't think the court has got to go this far. This question is, do you have a duty to offer screening? And that's been established in this case as part of the record. There's a duty to offer screening and offer a PSA every time the patient comes in. When it comes to diagnosis, it's not clear, at least it's surely not an issue here, but it's not clear across the board. Does that same doctor have a duty to make the diagnosis each time? That's the distinction between the failure to offer something and the failure to make a diagnosis. But if you divorce the continuing course of negligent treatment from the requirement that it be connected to a specific condition, aren't you saying, hey, he missed cancer and now he's mistreating a broken arm? Those are continuing course of medical treatment, even though the conditions are entirely different. Why wouldn't the argument you're now making to us say, given the statute of repose would have run with regard to the failure to diagnose the cancer. Nonetheless, we have now negligent treatment on her broken arm, so that resurrects the statute of repose. I don't know that you can resurrect it. Then the question becomes, is there a duty on the part of a doctor to make a diagnosis, to raise the issue of a diagnosis every time that patient comes back in? That's a separate question I'd put to the court. I don't know if we can run with it. When her mother was raised, he missed it. She had cancer and he missed it. Meanwhile, time passes and she comes in for a broken arm and he treats it improperly. Now we run the problem. The statute of repose applies. The statute of repose would have run on the cancer, except for the fact that three years after the misdiagnosis on the cancer, she came in and suffered negligent treatment for her broken arm. That's correct. In that instance, you've got two separate scenarios. In this case, it's the same thing. I'm looking for bright line rules, counsel. My concern is if we – your bright line rule is, as you explained at the beginning of this argument, the phrase for a specific condition is surplusage. It doesn't count. The Supreme Court didn't mean it. And as you just a moment ago stated, the test, Cunningham, applies if there's a continuing course of negligent treatment. It has to be the same condition. Well, now you're changing. No, no. My point is they're talking about a specific condition. They want a specific condition to exist, and there isn't a specific condition until you make a diagnosis. I understand their point. That's different than saying it's not got to be the same thing. Cunningham clearly rejected the concept that as long as I keep seeing the doctor, he's got to find everything wrong with me. That Cunningham rejected. That's the broad statute of repose that the plaintiff asked for in Cunningham, and the court said we reject that. The thing that gets you in the end has got to be the thing that was missed the first time. That's not a very helpful way of putting it, but that's – So how would you – when we're confronted with the broken arm and the cancer misdiagnosis, how would you state our conclusion that Cunningham applies in the statute of repose – The exception Cunningham doesn't apply in the statute of repose would bar it. Because there's no connection between the first error and the last error, if you will, whereas in this case there is a connection between the first error. It's the same error all the way through. The failure to diagnose exists. The failure to offer the screening exists all the way through. Whether there's a failure – whether there's a duty – you can't have a failure to diagnose until there's a duty. Whether there's a duty in the diagnosis case is something – I don't even know what the doctors would say, but I do know what they said in this case. So I think what we have here is a very narrow, small case. That's why I'm not looking for a huge bright-line rule. I think the problems we're having here is that every time you try to do a bright-line rule, somebody comes up with a different set of facts. If the lawyers don't, the doctors will. And real life has that way of doing that to all of us. Unless the court has further questions. Thank you, counsel. Thank you. Mr. Miller, any rebuttal, sir? Yes, Your Honor. Thank you for the opportunity again. The four-specific condition language came from Flynn v. Sweatt, 1st District, 1991. We had a case there, treatment over three years for multiple conditions, and the court focused specifically on that language. The Supreme Court picked it up from there. So that's where the origin of that phrase comes from. Secondly, I found it again here, and I want to leave this word with you. This is the New York court that we cited in our brief. Considering a similar issue, they said this. While the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment. And that's what I'm trying to get across here. You know, our experts have been not only disclosed but deposed, and there is a dispute on what standard of care is. Mr. Rasack is only the appellate attorney, so he would not have known that. I don't hold that against him. I trust you don't either. But there's a dispute on standard of care. So I won't contest that today. This is simply a question of law. Is failure to establish a course of treatment the same as a course of treatment? And is nonfeasance the same as misfeasance? I say no, and I think the certified question needs to be answered. Let me just observe that failure to establish a course of care is not, what was your phrase? Say it again. Failure to establish a course of treatment is not a course of treatment. I wish that had been the question, counsel. That would have been a lot easier for us to address without concerns and some of this other stuff, and that might have been a very helpful issue for us. Let me try this thing for a minute before I see the light go off. Yes. Failure to establish a course of treatment is neither negligent treatment nor a course of treatment. Whether you throw in an adjective or not, it's not treatment. I can't bill for it. The doctor can't bill for it. Medicare would never pay for it. If I got a bill for non-treatment under the guise that it was treatment, I wouldn't pay it. Okay. Thank you, counsel. Thank you very much. Well, thank you, Mr. Maddox. I advise that we recess for a few moments.